UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAUL ALLEN WEXLER.<br><br>　　　　Plaintiff,<br><br>v.<br><br>JENSEN PHARMACEUTICALS, INC., et al.<br><br>　　　　Defendants. | Case No. CV 15-03518-AB (AJWx)<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR REMAND** |

On April 6, 2015, Plaintiff Paul Allen Wexler ("Plaintiff") commenced an action in the Superior Court of California, County of Los Angeles (case no. BC577914) against corporate defendants Jensen Pharmaceuticals, Inc., Johnson & Johnson, Inc., Johnson & Johnson Services, Inc. ("Corporate Defendants"), and individual defendant Jason Plumley ("Plumley"). On May 11, 2015, Defendant Johnson & Johnson Services, Inc. ("Defendant"), the only defendant served with federal process, removed the action to this Court. (Dkt. No. 1.)

Before the Court is Plaintiff's Motion to Remand. (Dkt. No. 18.) Defendant filed an opposition and Plaintiff filed a reply. A hearing took place on October 19, 2015. Having considered the materials and argument submitted by the parties, and for the reasons below, the Court **DENIES** Plaintiff's Motion to Remand.

1.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff alleges six causes of action against the Defendants arising from the termination of his employment. The following allegations in Plaintiff's Complaint are relevant to the disposition of this motion.

Plaintiff is a 51 year old male and was employed as a Professional Pharmaceutical Sales Representative by the Corporate Defendants from March 2002 through August 4, 2014, when the Defendants wrongfully terminated his employment because of his age. Compl. ¶¶ 7, 9.

Plaintiff performed his job in an exemplary manner as reflected by positive performance reviews, pay raises, and various awards he received, including, in 2011 and 2012, the highest honor awarded to Pharmaceutical Sales Representatives. Compl. ¶ 8. In the summer of 2012, Plumley became Plaintiff's direct supervisor. Compl. ¶¶ 7, 10.

During one of Plumley's first ride-alongs with Plaintiff, Plumley told Plaintiff that "the hardest representatives to change are the older ones" and that "older workers are the hardest to train," "they are too set in their ways." Plaintiff felt that Plumley was directing this comment at him and threatening termination if he did not do as Plumley asked. Compl. ¶ 11.

Plaintiff was one of three representatives for the Los Angeles territory and the only one over fifty. When one of the three representatives resigned, Plumley replaced him with someone younger than forty, Eduardo Chang. Compl. ¶ 12. Despite Plaintiff's seniority and existing relationships, Plumley reassigned all but three of Plaintiff's Chinatown physicians and thirty percent of his Koreatown physicians to Chang. Most of the physicians Plaintiff was left with treated mostly Medi-Cal/Medicare Part D patients, and those plans did not initially cover one of Defendant's new drugs, Invokana. The other insurance plans prevalent among patients in Plaintiff's territory either didn't cover or provided low reimbursement for Invokana, which deterred their doctors from prescribing it. Plumley also rejected Plaintiff's

proposal to have several well-regarded speakers consult with the representatives in his territory, but Plumley approved similar proposals from younger sales representatives. (Compl. ¶ 13.)

In the summer of 2013, right after Invokana was launched, Plaintiff was issued his first ever corrective action plan (CAV), for low Invokana sales. But, the CAV was based an inaccurate report that did not capture all of the prescriptions doctors in Plaintiff's territory issued. Plaintiff ascribed the inaccuracy in the report to Plumley, saying that "had Plumley included the prescriptions . . . [Plaintiff's] numbers would have been similar to other sales representatives' initial Invokana sales." Compl. ¶ 14. Plumley didn't revoke the CAV even after the additional prescriptions were reflected in the reporting system. Id.

Plaintiff finished the fourth quarter of 2013 in to top 20% for sales of Xarelto and Invokana nationwide, and higher than Chang, who was the only other representative servicing the Los Angeles territory the preceding two quarters. Compl. ¶ 15. Despite these high sales rates, which Plaintiff claims should have resulted in him being ranked no lower than top four in the nation and region, during the first quarter of 2014 Plaintiff was ranked towards the bottom because he was expected to sell non-retail, non-pharmaceutical sales to long-term care facilities – a new task that was never part of his responsibilities or territory, and that Plumley failed to inform him about. Compl. ¶ 15.

At the end of 2013, one of Plaintiff's colleagues nominated him for an award for effective collaboration with other sales representatives, and that colleague told Plaintiff that Plumley told him he would not allow Plantiff to receive the award because "he was just performing his job duties." Compl. ¶ 16.

In the beginning of 2014, Plaintiff received a pay raise, but immediately after this, Plumley placed him on a 90-day Performance Improvement Plan ("PIP"), effective four days prior, for not meeting his performance quota for sales. Compl. ¶ 17. Plumley also advised Plaintiff that he could use the employee assistance program,

which suggested that Plumley "regarded" Plaintiff as being disabled or unable to cope or manage his work duties. *Id.* The PIP Plumley issued concludes with "Paul, our goal is to have you perform competently as a professional sales representative." Id. The PIP required Plaintiff to have bi-weekly phone calls with Plumley and ride-alongs with the Regional District Manager and a trainer. Compl. ¶18.

Some of Plumley's ride-alongs with Plaintiff did not involve assessing Plaintiff's performance. For example, Plumley had Plaintiff drive him to a deposition to testify about an accident, and had Plaintiff take him to a shop in Chinatown where he could buy "special jet black hair dye indicating that he wanted to stay young." Compl. ¶19.

When Plumley did accompany Plaintiff to physician's officers, many of the physicians told him not to bring Plumley anymore because they found him to be "'phony'" and "'aggressive.'" Compl. ¶20.

Plumley also told Plaintiff that he would have to perform a field ride with Field Trainer Noelle Abra in April or May 2014, but that field ride did not occur. However, during previous annual field rides, Ms. Abra never reported that Plaintiff had any performance issues. Los Angeles District Manager Ted Stark, who is younger than forty, accompanied Plaintiff for a full day in April or May 2014 and made no complaints about his performance. Compl. ¶ 21.

During a conference call, Chang asked Plaintiff to speak about closing strategies, and after Plaintiff spoke, "Plumley belittled [him] so harshly appearing to attack him, saying, 'no, you would never do that' and 'you should already know your customers.'" Afterwards, many of the representatives called Plaintiff to tell them that Plumley's conduct was unjustified and that they appreciated his comments. Compl. ¶ 23. Plumley also breached company confidentiality policy by telling other employees about Plaintiff's PIP. Compl. ¶ 23.

On May 22, 2014, two weeks before the PIP conclusion date, and before the quarter was over, while Plaintiff and Plumley were at a 3-day business meeting and

1  Plaintiff was checking out of his hotel, Plumley gave Plaintiff a "Final Notice"
2  informing him that his sales of Invokana were below quota and that his employment
3  could be terminated at any time. Plumley didn't explain the notice further or explain
4  what Plaintiff had to do to meet the sales standards. Compl. ¶ 24.
5       After giving Plaintiff the Final Notice, Plaintiff hired two new contract sales
6  representatives, both of whom were younger than forty and who had little experience
7  in the industry. Two months passed and Plaintiff was not counseled or criticized or
8  told that his performance was unsatisfactory in any way. In fact, Plaintiff's sales of
9  Invokana were increasing steadily and in the last 4-6 weeks of his employment, he
10 surpassed of the sales goals Plumley set. Compl. ¶ 25. Defendants terminated Plaintiff
11 of August 4, 2014. Compl. ¶ 26.
12      Based on the foregoing, Plaintiff asserts six causes of action against the
13 Defendants: (1) age discrimination in violation of California's Fair Employment and
14 Housing Act ("FEHA"), Cal. Gov. Code. § 12900, et seq.; (2) harassment in the basis
15 of age in violation of FEHA; (3) breach of express contract, (4) breach of implied-in-
16 fact contract, (5) wrongful termination in violation of public policy under FEHA; (6)
17 and intentional infliction of emotional distress ("IIED"). Plaintiff asserts all of his
18 claims against the Corporate Defendants, but only two of them against Plumley: his
19 age harassment claim, and his IIED claim.
20      **A.    Defendant's Notice of Removal and Plaintiff's Motion for Remand**
21      Defendant removed the action on the basis of diversity jurisdiction. Although
22 Plaintiff and defendant Plumley are both citizens of California, Defendant contends
23 that Plumley is a fraudulently joined "sham" defendant and that therefore his
24 citizenship should be disregarded. There is complete diversity of citizenship between
25 Plaintiff and the remaining Defendants.
26      Plaintiff now moves to remand the action to the Los Angeles Superior Court.
27 (Dkt. No. 18.) Plaintiff contends that Plumley was not fraudulently joined, and that
28

therefore his citizenship must be considered, which destroys complete diversity.[1] Defendants opposes.[2]

## II.  LEGAL STANDARD

### A.  Removal

Under 28 U.S.C. § 1441(a), a civil action may be removed to the district court where the action is pending if the district court has original jurisdiction over the action. Under 28 U.S.C. § 1332, a district court has original jurisdiction of a civil action where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and the dispute is between "citizens of different states." Section 1332 requires complete diversity, *i.e.*, that "the citizenship of each plaintiff is diverse from the citizenship of each defendant." *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 67–68 (1996). Section 1441 limits removal to cases where no defendant "properly joined and served . . . is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(a)(b)(2). Removal statutes are "strictly construe[d] against removal." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance. *Id*. Accordingly, the removing party bears a heavy burden of establishing original jurisdiction in the district court. *Id*.

### B.  Fraudulent Joinder

A non-diverse party may be disregarded for purposes of determining whether

---

[1] Plaintiff also attempts to argue that Defendant failed to establish Plaintiff's California citizenship or that the amount in controversy exceeds $75,000. The Court has reviewed the record and summarily rejects these arguments.

[2] Plaintiff has also failed to serve Plumley (and two other defendants) with federal court process, either on his own or in response to the Court's Order to Show Cause for Lack of Prosecution. *See* Dkt. No. 21 (OSC re: Lack of Prosecution), Dkt. No. 26 (Response to OSC showing state court process after case was removed). Although the OSC threatened to dismiss Plumley (and the other unserved defendants) if Plaintiff failed to serve them, the Court deemed it appropriate to resolve the jurisdictional fraudulent joinder issue first. However, Plaintiff's counsel's failure to serve Plumley with federal process undermines their assertion that Plaintiff's claims against Plumley are sound.

6.

jurisdiction exists if the court determines that the party's joinder was "fraudulent" or a "sham." *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001); *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998); *McCabe v. General Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987). The term "fraudulent joinder" is a term of art and does not connote any intent to deceive on the part of plaintiffs or their counsel. *Lewis v. Time Inc.*, 83 F.R.D. 455, 460 (E.D. Cal. 1979), *aff'd.*, 710 F.2d 549 (9th Cir. 1983). The relevant inquiry is whether plaintiff has failed to state a cause of action against the non-diverse defendant, and the failure is obvious under settled state law. *Morris*, 236 F.3d at 1067; *McCabe*, 811 F.2d at 1339.

The burden of proving fraudulent joinder is a heavy one. The removing party must prove that there is "no possibility that plaintiff will be able to establish a cause of action in State court against the alleged sham defendant." *Good v. Prudential Ins. Co. of America*, 5 F. Supp. 2d 804, 807 (N.D. Cal. 1998). In this regard, "[r]emand must be granted unless the defendant shows that the plaintiff 'would not be afforded leave to amend his complaint to cure [the] purported deficiency.'" *Padilla v. AT & T Corp.*, 697 F. Supp. 2d 1156, 1159 (C.D. Cal. 2009); *Macey v. Allstate Prop. & Cas. Ins. Co.*, 220 F. Supp. 2d 1116, 1117 (N.D. Cal. 2002) ("If there is a non-fanciful possibility that plaintiff can state a claim under California law against the non-diverse defendants the court must remand."). "Merely a 'glimmer of hope' that plaintiff can establish [a] claim is sufficient to preclude application of [the] fraudulent joinder doctrine." *Gonzalez v. J.S. Paluch Co.*, No. 12-08696-DDP (FMOx), 2013 WL 100210, at *4 (C.D.Cal. Jan.7, 2013) (internal quotations omitted); *accord Ballestros v. American Standard Ins. Co. of Wisconsin*, 436 F.Supp.2d 1070, 1072 (D. Ariz. 2006) (same) (citing *Mayes v. Rapoport*, 198 F.3d 457, 463-64 (4th Cir. 1999).

**III.   DISCUSSION**

To determine whether Plumley is a sham defendant, the court will examine whether either of Plaintiff's two claims against Plumley – for age harassment and IIED – is viable under settled California law.

A. **Defendant Has Shown That Plaintiff <u>Cannot</u> Establish His Harassment Claim Against Plumley.**

1. **Elements of a FEHA Harassment Claim**

Plaintiff claims that Plumley harassed him because of his age in violation of FEHA. FEHA makes it unlawful for, *inter alia*, for an "an employer . . . or any other person," to harass an employee because of age, disability, or medical condition. Cal. Gov. Code § 12940(j)(1). Under FEHA, "harassment" includes: (a) [v]erbal harassment, e.g. epithets, derogatory comments or slurs on a basis enumerated in the Act; (b) physical harassment, e.g. assault, impeding or blocking movement, or any physical interference with normal work or movement, when directed at an individual on a basis enumerated in the Act; [or] (c) visual forms of harassment, e.g. derogatory posters, cartoons, or drawings . . ." Cal.Code Regs. Tit. 2 § 11019, subd. (b)(1).

In order to constitute harassment, conduct must be "sufficiently severe or pervasive to 'alter the conditions of [the victim's] employment and create an abusive work environment," and it excludes conduct that is "occasional, isolated, sporadic, or trivial." *Fisher v. San Pedro Peninsula Hosp.*, 214 Cal.App.3d 590, 609 (Cal. Ct. App. 1989) (citations omitted). California law recognizes that "harassment by a high-level manager of any organization may be more injurious to the victim because of the prestige and authority that the manager enjoys." *Roby v. McKesson Corp.*, 47 Cal.4th 686, 709 (Cal. 2009).

Significantly, California law distinguishes between discriminatory employment actions, and harassment. Under FEHA, is it unlawful for "an employer" to discriminate, but it is unlawful for "an employer . . . *or any other person*" to harass. See Cal. Gov. Code. §§ 12941, 12940 (emphasis added). Thus only an employer – and not individuals – can be held liable for discriminatory employment actions, typically through a claim for employment discrimination. By contrast, an individual employee, in addition to an employer, can be held liable for harassment. How this distinction applies to this case is the issue central to this motion. In *Janken v. GM Hughes*

8.

*Electronics*, 46 Cal.App.4th 55 (1996), the Court provide a succinct explanation of the distinction, which is worth quoting in full:

> [T]he Legislature intended that commonly necessary personnel management actions such as hiring and firing, job or project assignments, office or work station assignments, promotion or demotion, performance evaluations, the provision of support, the assignment or nonassignment of supervisory functions, deciding who will and who will not attend meetings, deciding who will be laid off, and the like, do not come within the meaning of harassment. These are actions of a type necessary to carry out the duties of business and personnel management. These actions may retrospectively be found discriminatory if based on improper motives, but in that event the remedies provided by the FEHA are those for discrimination, not harassment. Harassment, by contrast, consists of actions outside the scope of job duties which are not of a type necessary to business and personnel management. This significant distinction underlies the differential treatment of harassment and discrimination in the FEHA.

*Janken*, 46 Cal.App.4th at 64-65.

### 2. The Complaint Does Not State a FEHA Harassment Claim Against Plumley.

Here, almost all of the actions that Plaintiff alleges Plumley engaged in are properly categorized a management actions, including assigning and redistributing Plaintiff's work, reviewing Plaintiff's program requests, issuing Plaintiff a corrective action plan and PIP, expanding Plaintiff's job responsibilities (albeit without informing him), and coaching and critiquing Plaintiff's performance through regular phone calls and ride-alongs. These are the kinds of "commonly necessary personnel management actions" that may give rise to a claim against an employer for employment discrimination, but that do not ordinarily give rise to a claim against another employee for harassment.

The only actions attributed to Plumley that are arguably not management actions are (1) Plumley's statement to Plaintiff in the summer of 2012, during their first ride-along, to the effect that older employees are the hardest to change; (2) having Plaintiff drive him to a deposition during one ride-along and (3) to buy black hair dye during another; (4) responding "harshly" to Plaintiff's comments during a conference call by saying "no, you would never do that" and "you should already know your customers"; and (5) giving Plaintiff his final notice while he was checking out of a hotel. Thus, Plaintiff has identified only five instances of conduct over a two-year period that are not personnel actions or that have additional aspects to them (giving Plaintiff final notice at a hotel), and three of them do not have even an attenuated connection to age – the basis upon which Plaintiff claims Plumley harassed him. Only the comment about older workers being harder to train has any facial connection to age, but it is unremarkable and cannot be deemed an "epithet[], derogatory comment[] or slur[]." That Plumley had Plaintiff take him, during a ride-along, to buy black hair dye for himself has an attenuated connection to age, but even if it shows that Plumley was concerned about his own appearance, it does not amount to harassment because it could not have created an abusive work environment, especially in the absence of any other arguably harassing conduct. Finally, taken together, these actions are neither severe nor pervasive, such that they arguably altered the conditions of Plaintiff's employment.

Plaintiff asks the Court to consider Plumley's management conduct and his non-management conduct together, suggesting that the totality of the allegations demonstrates harassment. It is true that managers *may* be individually liable for harassment where their personnel or management decisions "have a secondary effect of communicating a hostile message. This occurs when the actions establish a *widespread* pattern of bias." *Roby*, 47 Cal.4th at 709 (emphasis added). And, a fact finder may look to both categories of evidence – evidence of the manager's conduct falling outside his or her necessary job duties *and* evidence of the manager's official

10.

actions – to determine whether an individual manager engaged in harassment. There is "no reason why an employee who is the victim of discrimination based on some official action of the employer cannot also be the victim of harassment by a supervisor for abusive messages that create a hostile working environment… ." *Id*. at 707. *See also id*. at 709 ("discrimination and harassment claims can overlap as an evidentiary matter" because evidence that a manager took adverse official actions "can provide evidentiary support for a harassment claim by establishing discriminatory animus on the part of the manager responsible for the discrimination, thereby permitting the inference that rude comments or behavior by that same manager was similarly motivated by discriminatory animus.").

However, that management actions *can* be harassing or *can* be probative of harassment in some cases does not mean that this is such a case. Stated simply, viewing the Complaint in the light most favorable to Plaintiff, the employment actions alleged in the Complaint do not plausibly have "a secondary effect of communicating a hostile message." *Roby*, 47 Cal.4th at 709. They appear to be precisely the routine personnel management activities attributable to the employer which are actionable, if at all, as employment discrimination. Furthermore, none of the other conduct amounted to harassment or created a hostile work environment towards Plaintiff on the basis of his age, so the personnel actions cannot plausibly be interpreted as contributing to, or compounding, existing harassment. Nor does the management conduct have any evidentiary value with respect to the harassment claim because none of the non-management conduct Plaintiff alleges was pervasive or abusive such that it can be construed as harassment. Plaintiff may believe – and indeed he has pled – that the adverse employment actions Plumley and his employer took against him were motivated by age discrimination, but such actions do not also give rise to a claim for harassment absent other actions or factors demonstrating a hostile work environment.

As the *Janken* court observed, the legislature itself distinguished between FEHA discrimination claims and FEHA harassment claims, both with respect to what conduct

constitutes a violation, and with respect to who may be held liable for each claim. It is important that the courts honor this distinction. However, honoring that distinction when the issue is fraudulent joinder presents a challenge: it can be difficult for a court to conclude that a plaintiff has *no possibility* of establishing a harassment claim against a non-diverse individual defendant, even if most of that defendant's allegedly harassing conduct is primarily management activity. By the same token, the law governing when management activity can give rise to a harassment claim makes clear that the management activity must be harassing in some way. The activity alleged in the Complaint does not meet this standard. The Court also notes that honoring the discrimination-harassment distinction has important consequences where, as here, it appears that a plaintiff has haled a non-diverse individual defendant into court based on unviable state law claims, simply to secure a state court forum. Threatening an individual with liability that should properly attach to his employer because it is based on employment-related activity subverts the logic of FEHA. Plaintiffs who engage in such tactics should not be rewarded with their preferred forum.

For the foregoing reasons, Plaintiff's has not alleged a claim for harassment under FEHA.

### B. Defendant Has Shown That Plaintiff <u>Cannot</u> Establish His IIED Claim Against Plumley.

Plaintiff's claim against Plumley for intentional infliction of emotional distress is premised on the same conduct as his harassment claim, and it is flawed for similar reasons. To establish a claim for intentional infliction of emotional distress, a plaintiff must show "'(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct.'" *Hughes v. Pair*, 46 Cal. 4th 1035, 1050 (2009) (citations omitted). "A defendant's conduct is 'outrageous' when it is so 'extreme as to exceed all bounds of that usually tolerated in

a civilized community.'" *Id.* at 1050-51 (citations omitted). Just as management conduct does not constitute harassment, "a simple pleading of personnel management activity is insufficient to support a claim of intentional infliction of emotional distress, even if improper motivation is alleged." *Janken*, 46 Cal. App. 4th at 80. "If personnel management decisions are improperly motivated, the remedy is a suit against the employer for discrimination." *Id.*

As discussed above, Plaintiff's Complaint is premised almost entirely on personnel management action and do not support a claim for IIED. And, just as Plumley's non-management actions were not of the quality or quantity to support a claim for harassment, they are also not outrageous or so extreme as to exceed all bounds of that usually tolerated in a civilized community. In addition, at oral argument, Plaintiff conceded that the IIED claim against Plumley is insufficient. Thus, the Complaint does not state an IIED claim against Plumley.

### C. Nothing in the Record Suggests that Plaintiff Can Amend the Complaint to Plead Arguably Viable Harassment and IIED Claims Against Plumley.

Plaintiff faults Defendant for not establishing beyond all doubt that Plaintiff could not amend his complaint to cure the defects in this claims. However, Defendant has shown that Plaintiff's theory for construing management activity as harassment is untenable in light of settled California law. Defendant has also presented documentary evidence indicating that at least some of Plaintiff's factual allegations are untrue, such as Plaintiff's claim that he never received a corrective action before Plumley issued one, the suggestion throughout that Plaintiff was a model employee, and Plaintiff's claim that Plumley never approved any of Plaintiff's speaker proposals. *See, e.g.*, Collins Decl. Exh. C (January 17, 2012 warning, which appears to be the start of a corrective action process, concerning Plaintiff's year-long violation of Defendant's expense reporting policy); Collins Decl. Exh. A (August 7, 2013 warning concerning Plaintiff's ongoing violations of employer's expense reporting policy); *and* Plumley

13.

Decl. Exh. H (July 3, 2014 email from Plumley to Plaintiff approving of one of Plaintiff's program requests).

Defendant also submitted six coaching reports prepared by Plumley concerning his field rides with Plaintiff. *See* Plumley Decl. Exhs. A-F. Certainly these reports are not conclusive, but it suffices to say that these reports do not tend to reflect a manager-employee relationship characterized by harassment, and indeed tend to suggest the opposite: that Plumley was intensively coaching Plaintiff to help him improve his sales skills and performance.

Considering the Complaint, settled California law, these unrebutted materials, and Plaintiff's failure to offer any other facts[3], the Court finds that Defendant has met its burden of showing that Plaintiff could not amend his Complaint to plead a viable claim for FEHA harassment or IIED against Plumley.

## IV. CONCLUSION

Defendant has met its heavy burden to prove by clear and convincing evidence that there is no possibility Plaintiff could assert a FEHA harassment claim or IIED claim against Plumley. Accordingly, Plumley was fraudulently joined and his citizenship should be disregarded for purposes of diversity jurisdiction. Removing Plumley from the equation, the remaining Defendants are completely diverse from Plaintiff, so there is complete diversity of citizenship. Also, the amount in controversy requirement is satisfied. Accordingly, the Court has subject-matter jurisdiction over Plaintiff's action. The Court therefore **DENIES** Plaintiff's Motion to Remand. (Dkt. No. 18.)

//
//
//

---

[3] At oral argument, Plaintiff did not offer any other facts he could plead to salvage his claims, thus conceding that the Complaint was complete, at least as to Plumley.

As discussed herein, Plaintiff has not and cannot state any claim against Plumley. The Court therefore **DISMISSES** Plumley from this action with prejudice.

**IT IS SO ORDERED.**

Dated: October 20, 2015

HONORABLE ANDRÉ BIROTTE JR.
UNITED STATES DISTRICT COURT JUDGE

15.